Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| BRANDON CRUZ GONZÁLEZ Y FRENTE UNIDO PRO DEFENSA DEL VALLE DE LAJAS, INC.<br><br>Apelados<br><br>v.<br><br>FERNANDO CABELLO MILLÁN, YAMILLET GARCÍA MARRERO Y LA SLG COMPUESTA POR AMBOS<br><br>Apelantes | KLAN202301146 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Sobre:<br>*Injunction* por Obra de Desarrollo de Terreno sin Permiso; Estorbo Público y Desvío Ilegal de Aguas de Escorrentía<br><br>Caso Número:<br>MZ2023CV00758 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 14 de marzo de 2024.

Los apelantes, Fernando Cabello Millán, Yamillet García Marrero y la Sociedad Legal de Gananciales por ambos compuesta, comparecen ante nos para que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Mayagüez, el 9 de noviembre de 2023, notificada el 22 de noviembre del mismo año. Mediante la misma, el foro primario declaró *Ha Lugar* una acción civil sobre *injunction,* estorbo público y desvío ilegal de aguas promovida por los aquí apelados, el señor Brandon Cruz González y el Frente Unido Pro Defensa del Valle de Lajas, Inc.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

**I**

El 11 de mayo de 2023, los apelados presentaron la demanda de *injunction* de epígrafe, al amparo de lo dispuesto en el Artículo

Número Identificador

SEN2024 _____

14.1 de Ley para la Reforma del Proceso de Permisos de Puerto Rico, Ley 161-2009, 23 LPRA sec. 9024, así como una acción por estorbo público bajo el Artículo 277 del Código de Enjuiciamiento Civil, 31 LPRA sec. 2761, y otra por alteración de aguas de escorrentías al amparo del Artículo 802 del Código Civil, 31 LPRA sec. 8065. En esencia, plantearon ser los titulares de una finca contigua a una perteneciente a los aquí apelantes en el municipio de Lajas, en la que estos estaban llevando a cabo una construcción contraria a las disposiciones legales y reglamentarias pertinentes. De acuerdo con las alegaciones de los apelados, el predio de los apelantes estaba formalmente calificado como Agrícola en Reserva Uno (AR-1) y clasificado como Suelo Rústico Especialmente Protegido Agrícola (SREP-A). A su vez, añadieron que el referido inmueble era un área por donde discurrían aguas de drenaje de la Reserva Agrícola del Valle de Lajas. A tenor con ello, alegaron que los apelantes efectuaron obras de deforestación y descortezamiento de terreno no autorizadas. Afirmaron, por igual, que estos rellenaron el solar, afectando la elevación del predio, así como su colindancia y un canal de agua sito frente a su inmueble.

Los apelados indicaron que, dado a lo anterior, presentaron una querella ante la Junta de Planificación y el Departamento de Recursos Naturales. Expusieron que, el 11 de marzo de 2022, la Junta de Planificación emitió un *Informe de Investigación* en el que se hizo constar que los apelantes no tenían permiso para las obras de descortezamiento y relleno de terreno. No obstante, sostuvieron que, pese a ello, los apelantes continuaron el desarrollo desautorizado del inmueble, elevando el terreno a causa de las múltiples obras de relleno y ocasionando que su propiedad se inundara en tiempos de lluvia. Al abundar, expresaron que, el 11 de octubre de 2022, la Junta de Planificación emitió una *Notificación de Hallazgos y Orden de Mostrar Causa,* por la cual dispuso que, en

efecto, los apelantes no solicitaron permiso para las obras que estaban llevando a cabo, todo en violación al derogado Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9233 de 2 de diciembre de 2020 (Reglamento Conjunto 2020) y a la Ley 161-2009, *supra*. A tenor con ello, expusieron que el referido organismo dictó una orden a los apelantes requiriéndole mostrar causa por la cual no debería imponérsele una multa, una orden de cese y desista, ni solicitar la intervención del tribunal para gestionar la demolición o paralización de los trabajos. Según indicaron, mediante *Resolución Parcial* del 1 de diciembre de 2022, la Junta de Planificación ratificó su determinación, en cuanto a que los apelantes no tenían los correspondientes permisos de construcción, por lo que les extendió un plazo de veinte (20) días para obtenerlos, so pena de multarlos. No empece a ello, según informado por los apelados, los apelantes continuaron el desarrollo ilegal del terreno. Además, expresaron que estos gestionaron un cambio en la calificación de su solar, el cual, tras considerarlo, la Junta de Planificación denegó.

A tenor con lo antes expuesto, los apelados solicitaron al tribunal primario que proveyera el interdicto solicitado ordenando el cese y desista de los trabajos en la finca en disputa, así como la demolición de las obras ilegalmente construidas y la remoción del relleno depositado. Igualmente, peticionaron que se declarara la obra como un estorbo público. Del mismo modo, los apelados requirieron que se declarara *Ha Lugar* la causa de acción al amparo de lo dispuesto en el Código Civil, *supra*, sobre desvío ilegal de drenaje de aguas. Los apelados también solicitaron al Tribunal de Primera Instancia que declarara la temeridad de los apelantes por no haber acatado las órdenes de la Junta de Planificación.

El 25 de mayo de 2023 los apelantes presentaron ante el Tribunal de Primera Instancia una *Moción en Solicitud de Desestimación.* En lo pertinente, expusieron que, contrario a lo alegado por los apelados, contaban con un permiso de construcción expedido por la Oficina de Gerencia de Permisos (OGPe) el 13 de julio de 2022, así como con el endoso del municipio de Lajas para el desarrollo de su predio. De igual forma, expresaron que, dado a que los apelados habían presentado una querella administrativa ante la Junta de Planificación y el Departamento de Recursos Naturales, era de aplicación al caso la doctrina de agotamiento de remedios administrativos, hecho que incidía sobre la jurisdicción del tribunal. Así, sostuvieron que no procedía proveerse para el *injunction,* toda vez que los apelados disponían de otros remedios legales para encausar su reclamo. De este modo, solicitaron al Tribunal de Primera Instancia la desestimación de la causa de epígrafe.

El 26 de mayo de 2023, el foro sentenciador dio inicio a la celebración de la vista de interdicto preliminar y permanente. Conforme surge de la *Minuta* correspondiente, el Adjudicador declaró *No Ha Lugar* la solicitud de desestimación promovida por los apelantes. Como fundamento, expresó que el Artículo 14.1 de la Ley 161-2009, *supra,* permitía a los apelados valerse de una acción de *injunction,* ello con independencia de que existiera un procedimiento pendiente ante una agencia administrativa.

La celebración de la vista continuó durante los días 5 de julio de 2023 y el 11 de agosto de 2023. Se desprende de las respectivas *Minutas* que el apelado Cruz González prestó su declaración y que fue debidamente contrainterrogado por el representante legal de los apelantes. De igual forma, el apelante Cabello Millán ofreció en evidencia su testimonio, ello a favor de sostener la legitimidad del desarrollo de su inmueble. Durante la vista, las partes estipularon cierta prueba documental e ilustrativa.

Sometido el caso para su final disposición, el 22 de noviembre de 2023, el Tribunal de Primera Instancia notificó la *Sentencia* aquí apelada. En la misma, expuso que toda la evidencia examinada durante la vista estableció que, en efecto, los apelantes no contaban con el permiso requerido para llevar a cabo el desarrollo de su inmueble, tal cual alegado en la demanda. Al abundar, el foro primario dispuso que el permiso que la OGPe expidió a favor de los apelantes, únicamente proveía para el anclaje de un vagón en su solar y no para llevar a cabo trabajos de relleno de corteza terrestre ni de excavaciones. Enfatizó el hecho de que, al investigar la querella administrativa radicada por los apelados, la Junta de Planificación advirtió las construcciones y trabajos ilegales en el terreno de los apelantes. Sostuvo que, como resultado, el organismo expresamente determinó que los apelantes no obtuvieron los permisos requeridos para legalizar las obras por las cuales se produjo su intervención y que, a su vez, les denegó una solicitud sobre cambio de calificación de la finca.

El tribunal primario afirmó que la prueba demostró que, aun lo anterior, los apelantes continuaron desarrollando el terreno en disputa y construyendo en la propiedad, todo sin legitimación a los efectos. Específicamente, indicó que los testimonios ofrecidos en evidencia durante la vista no solo establecieron que la OGPe, no les concedió el permiso para descortezar y rellenar, sino que tampoco les expidió permiso alguno para validar ciertas obras y modificaciones de urbanización que estaban efectuando dentro del predio. Igualmente, el foro sentenciador expresó que estos no contaban con permiso alguno que imprimiera legalidad al hecho de colocar un segundo vagón en su propiedad.

En virtud de todo lo antes expuesto, el Tribunal de Primera Instancia determinó que, según los hechos probados, correspondía concluir que los apelantes no contaban con los permisos de uso,

construcción y de obras de infraestructura requeridos para validar la obra que realizaban en el inmueble en controversia. Así, y tras resolver que concurrían los criterios pertinentes al interdicto estatutario solicitado por los apelados, dirigido, el mismo, a evitar actividades ilegales, ordenó la inmediata paralización y demolición de la obra en la finca de los apelantes, así como el retiro del relleno de corteza terrestre añadido. De igual modo, determinó que la conducta procesal de los apelantes era una constitutiva de temeridad, razón por la cual les impuso el pago de $4,000.00 por concepto de honorarios de abogado.

Inconformes, el 22 de diciembre de 2023, los apelantes comparecieron ante nos, mediante el recurso de apelación que nos ocupa. En el mismo exponen los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia [al] declarar con lugar la demanda instada, ante una prueba insuficiente y en ausencia de prueba pericial necesaria para realizar ciertas determinaciones de hecho.

> Erró el Tribunal de Primera Instancia [al] realizar ciertas determinaciones de hecho sin contar con la prueba necesaria para efectuar las mismas, ni haberse desfilado la misma en la vista de interdicto preliminar y permanente.

> Erró el Tribunal de Primera Instancia y abusó de discreción al imponer a los demandados el pago de honorarios por alegada temeridad.

> Erró el Tribunal de Primera Instancia al efectuar una determinación de alegada temeridad a los demandados-apelantes, carente de determinaciones de hecho y conclusiones de derecho en los que se basa dicha determinación.

Luego de examinar el expediente de autos, y con el beneficio de la comparecencia de ambas partes de epígrafe, procedemos a disponer del asunto.

## II

### A

De ordinario, "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición

del juez o la jueza a la prueba presentada [...]". *Gómez Márquez et al. v. El Oriental,* 203 DPR 783, 792 (2020), citando a *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013). De ahí que las determinaciones de credibilidad que realiza el tribunal primario están revestidas de una presunción de corrección, razón por la cual, en este aspecto, gozan de un amplio margen de deferencia por parte del foro intermedio. *Dávila Nieves v. Meléndez Marín,* supra, pág. 777; *Argüello v. Argüello,* 155 DPR 62, 79-80 (2001); *Blás v. Hosp. Guadalupe,* 146 DPR 267, 270 (1998). Asimismo, como norma, un tribunal apelativo está impedido de sustituir o descartar, por sus propias apreciaciones, las determinaciones de hechos que realiza el foro sentenciador, fundamentando su proceder en un examen del expediente sometido a su escrutinio. *Dávila Nieves v. Meléndez Marín,* supra, pág. 771; *Serrano Muñoz v. Auxilio Mutuo,* 171 DPR 717, 727 (2007); *Rolón v. Charlie Car Rental, Inc.,* 148 DPR 420, 433 (1999).

De ordinario, el Tribunal de Primera Instancia es quien está en mejor posición para aquilatar la prueba testifical que ante sí se presentare, puesto que es quien oye y observa declarar a los testigos. *Gómez Márquez et al. v. El Oriental,* supra, pág. 794-795; *Dávila Nieves v. Meléndez Marín,* supra, pág. 772; *ELA v. PMC,* 163 DPR 478, 490 (2004). En este contexto, el juzgador de hechos goza de preeminencia al poder apreciar sus gestos, contradicciones, manierismos, dudas y vacilaciones, oportunidad que le permite formar en su conciencia la convicción de si dicen, o no, la verdad. *López v. Dr. Cañizares,* 163 DPR 119, 136 (2004).

Ahora bien, la normativa antes expuesta no es de carácter absoluto. Si bien el arbitrio del foro primario es respetable, sus dictámenes están sujetos a que los mismos se emitan conforme a los principios de legalidad y justicia. *Méndez v. Morales,* 142 DPR 26, 36 (1996); *Cárdenas Maxán v. Rodríguez Rodríguez,* 125 DPR

702, 712 (1990). Al amparo de ello, el ordenamiento jurídico vigente dicta que el criterio de deferencia antes aludido cede, entre otras instancias, cuando se determina que el juzgador de hechos incurrió en pasión, prejuicio, parcialidad o error manifiesto". *BPPR v. Gómez Alayón,* 2023 TSPR 145 (2023), 213 DPR ____ (2023); *Gómez Márquez et al. v. El Oriental,* supra, pág. 793; *Citibank et al. v. ACBI et al.,* 200 DPR 724, 736 (2018); *Dávila Nieves v. Meléndez Marín,* supra, pág. 772; *Rodríguez v. Nationwide Insurance,* 156 DPR 614, 623 (2002). Con relación a este aspecto, la doctrina reconoce que, ante una alegación de pasión prejuicio o parcial, el foro intermedio viene llamado a auscultar si, en efecto, el tribunal primario cumplió con adjudicar la controversia de que trate de manera imparcial, todo en la consecución de la misión de impartir justicia. *Gómez Márquez et al. v. El Oriental,* supra, pág. 795; *Dávila Nieves v. Meléndez Marín,* supra, pág. 775. Incurre en error manifiesto el tribunal de hechos, cuando sus conclusiones "están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida". *Íd.* Así pues, el error atribuido al ejercicio del tribunal primario debe establecer que, en la gestión de apreciar la prueba sometida ante sí, este se distanció de la realidad fáctica o descansó "exclusivamente en una parte de la prueba, mientras hubo otra [...] que la contradijera". *Íd.*

Ahora bien, en vista de que toda sentencia o determinación judicial está protegida por una presunción de corrección y validez, la parte que acude al auxilio del tribunal apelativo tiene el deber de colocar a dicho foro en condiciones suficientes para que pueda conceder el remedio solicitado. *Morán v. Marti,* 165 DPR 356, 366 (2005); *Santos Green v. Cruz,* 100 DPR 9, 15 (1971). Por tanto, para poder atender en los méritos los argumentos de su recurso, el promovente del mismo no sólo debe discutir a cabalidad los señalamientos alegados, sino, también, acompañarlo con la prueba

necesaria para demostrar el error o el abuso de discreción invocado. *Santos Green v. Cruz,* supra, pág. 15; *De la Rosa v. Puerto Rico Motors,* 58 DPR 341, 347 (1941).

Sobre ello, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> [...] cuando un peticionario señala errores dirigidos a cuestionar la apreciación de la o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba; (2) exposición estipulada o; (3) exposición narrativa.

*Pueblo v. Pérez Delgado*, 211 DPR 654, 671, 673 (2023).

En ausencia de alguno de los mecanismos de prueba antes indicados, los tribunales de mayor jerarquía no pueden cumplir a cabalidad la función revisora que les asiste. *Pueblo v. Pérez Delgado,* supra, pág. 671. Así pues, si la parte apelante no coloca al tribunal intermedio en la posición de ponderar y adjudicar los errores señalados, procede la desestimación del recurso que atiende o la confirmación del dictamen apelado. Bajo estas circunstancias y en lo aquí pertinente, en ausencia de la transcripción de la prueba testimonial, el tribunal intermedio solo revisará la comisión de un error de derecho cuando éste claramente se desprenda del expediente apelativo. *Santos Green v. Cruz,* supra, pág. 15.

**B**

Por su parte, la Ley Para la Reforma del Proceso de Permisos de Puerto Rico, Ley 161-2009, 23 LPRA sec. 9011, *et seq*, constituye el marco legal y administrativo que rige los procesos de solicitud, evaluación, concesión y denegación de permisos por el Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Su objetivo es la transformación del sistema de permisos en Puerto Rico, a fin de que resulte en uno más transparente, ágil, confiable y eficiente. Exposición de Motivos, Ley

161-2009, *supra*. De igual modo, provee una estructura para la evaluación y otorgamiento de permisos afín con las leyes y reglamentos aplicables, a los efectos de establecer un equilibrio entre el desarrollo económico, la protección de los recursos naturales y la protección del derecho al disfrute de la propiedad. *Íd.*

La Ley 161-2009, *supra*, creó la Oficina de Gerencia de Permisos (OGPe), organismo adscrito a la Junta de Planificación, que ostenta autoridad legal suficiente para evaluar, conceder y/o denegar determinaciones finales y permisos relacionados al desarrollo y uso de terrenos en Puerto Rico. 23 LPRA sec. 9018. En lo atinente a la controversia que aquí atendemos, el Artículo 14.1 de la Ley 161-2009, *supra*, dispone como sigue:

> La Junta de Planificación, así como cualquier entidad gubernamental concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico en representación del interés público o una persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction, mandamus*, sentencia declaratoria, o cualquier otra acción adecuada para solicitar: (1) la revocación de un permiso otorgado, cuya solicitud se haya hecho utilizando información incorrecta o falsa; (2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; (3) la paralización de un uso no autorizado; (4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.

> Indistintamente de haberse presentado una querella administrativa ante la Junta de Planificación, entidad gubernamental concernida, Municipio Autónomo con Jerarquía de la I a la V o cualquier otra dependencia o instrumentalidad del Gobierno de Puerto Rico, alegando los mismos hechos, una parte adversamente afectada podrá presentar un recurso extraordinario en el Tribunal de Primera Instancia. Una vez habiéndose presentado el recurso extraordinario al amparo de esta sección, la agencia administrativa perderá jurisdicción automáticamente sobre la querella y cualquier actuación que llevare a cabo con respecto a la misma será considerada ultra vires.

> [...]

23 LPRA sec. 9024.

La letra del Artículo 14.1, *supra,* provee un mecanismo interdictal extraordinario de carácter estatutario y sumario que se limita a la obtención de órdenes para provocar la paralización inmediata, provisional o permanente de usos o actos contrarios a la ley. La norma reconoce que un *injunction* estatutario es independiente de un *injunction* tradicional, por lo que está exento de las exigencias legales que le rigen. *Next Step Medical v. Bromedicom et al.,* 190 DPR 474, 486 (2014). El estado de derecho dispone que los criterios para la ejecución del *injunction* tradicional son más rigurosos que los aplicables al *injunction* estatutario. *Íd*; *CBS Outdoor v. Billboard One, Inc.,* 179 DPR 391, 410 (2010). Ello obedece a que, en esencia, el interdicto tradicional se adoptó del sistema de equidad inglés para disponer de situaciones para cuya atención no existe remedio adecuado en ley. *Next Step Medical v. Bromedicom et al.,*supra, pág. 486.

De otro lado, el *injunction* estatutario es producto de un mandato legislativo expreso. *ARPe v. Rivera,* supra, pág. 444. De ahí que, distinto al caso del interdicto tradicional, su concesión "requiere un tratamiento especial, enmarcado en un escrutinio judicial más acotado". *Next Step Medical v. Bromedicom et al.,* supra, pág. 497. Según la interpretación normativa, al momento de presentarse una petición de *injunction* de esta naturaleza, "[no] se requiere alegación ni prueba de daños irreparables, [sino] solo la determinación de que el demandado ha violado las disposiciones de la ley". *ARPe v. Rivera,* 159 DPR 429, 444 (2003). A su vez, y en referencia particular al interdicto estatutario contemplado en el Artículo 14.1 de la Ley 161-2009, *supra*, la parte promovente del mismo debe acreditar ante el foro competente que: 1) que existe una ley o reglamento que regula el uso o actividad denunciada y; 2) que la persona o personas señaladas se encuentran realizando un uso o

actividad en violación a esa ley o reglamento. *ARPe v. Rivera,* supra, pág. 445[1] ; J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 2da ed., Estados Unidos, Pubs. JTS, 2011, T. V, pág. 1672.

## C

Finalmente, la *temeridad* constituye aquel patrón de conducta que lleva a una de las partes a incurrir en los gastos de un litigio cuya controversia pudo haberse resuelto fuera de los tribunales y que afecta la sana administración de la justicia. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 212 (2013); *Blás v. Hosp. Guadalupe,* supra, pág. 335; *Torres Ortiz v. ELA,* 136 DPR 556, 565 (1994); *Elba ABM v. UPR,* 125 DPR 294, 328 (1990). Una parte ha incurrido en temeridad cuando está presente alguna de las siguientes circunstancias: 1) contestar una demanda y negar responsabilidad total; 2) defenderse injustificadamente de la acción en su contra; 3) creer que la cantidad reclamada es exagerada y que tal sea el único motivo por el cual se opone a las alegaciones del demandante, pudiendo limitar la controversia a la fijación de la correspondiente cuantía; 4) incurrir en un litigio del cual *prima facie* se desprende su responsabilidad y; 5) negar un hecho cuya veracidad conste. *Blas v. Hosp. Guadalupe,* supra, págs. 335-336; *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 722 (1987).

Una vez un tribunal con competencia determina que se ha incurrido en temeridad, está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de *honorarios de abogado. Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). Al respecto, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), dispone como sigue:

---

[1] Aclaramos que los antedichos factores se establecieron en *ARPe v. Rivera,* supra, ello en atención a la letra del Artículo 28 de la Ley Orgánica de la Junta de Planificación de Puerto Rico Ley Núm. 75 de 24 de junio de 1975, 23 LPRA sec. 72, estatuto derogado por la vigente Ley 161-2009, *supra.* No obstante, dicha disposición, guarda cierta correspondencia con la letra del Artículo 14.1, *supra,* por lo que empleamos la norma jurisprudencial resuelta para disponer de la causa de epígrafe.

.        .        .        .        .        .        .        .

(d) *Honorarios de Abogado* - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.  En caso que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

El antedicho estatuto preceptúa en nuestro esquema procesal la intención de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito.  *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148-149 (2022); *Torres Montalvo v. Gobernador ELA,* supra, pág. 778, citando a *Andamios de PR v. Newport Bonding,* 179 DPR 503, 520 (2010).  De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa.  Así, el juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio.  Por tanto, la determinación que en su día emita, solo será objeto de revisión si ha mediado *abuso de discreción* en el ejercicio de su ministerio.  *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188 (2008)*; Blás v. Hosp. La Guadalupe,* supra, pág. 334*; Fernández v. San Juan Cement Co.,* supra pág. 722.  En dicho contexto, la doctrina vigente reconoce que un tribunal incurre "en abuso de discreción cuando el juez: ignora sin fundamento algún hecho material; cuando [el juez] le concede demasiado peso a un hecho inmaterial y funda su decisión principalmente en ese hecho irrelevante, o cuando éste, a pesar de examinar todos los hechos del caso, hace un análisis liviano y la

determinación resulta irrazonable". *Citibank et al. v. ACBI et al.*, supra, pág. 736.

**III**

En la presente causa, los apelantes aducen que el Tribunal de Primera Instancia erró al declarar *Ha Lugar* la demanda de *injunction* de epígrafe, ello, al haberse apoyado en prueba, a su juicio, insuficiente. En particular, impugnan las determinaciones de hecho dictadas por el foro primario, fundamentándose en que las mismas no se sustentaron en prueba pericial ni en la evidencia necesaria para establecer la procedencia del mecanismo interdictal solicitado. A su vez, los apelantes afirman que el tribunal primario incurrió en error al encontrarlos incursos en temeridad y, en consecuencia, al imponerles el pago de una suma determinada por concepto de honorarios de abogado. Habiendo examinado los referidos señalamientos a la luz de los hechos establecidos y la norma aplicable, confirmamos la *Sentencia* apelada.

Los apelantes cuestionan ante esta Curia la apreciación que de la prueba efectuó el tribunal sentenciador. Sin embargo, no sometieron ante nos copia de la transcripción de los procedimientos en la vista de *injunction,* de modo que no nos colocaran en posición tal de poder entender sobre sus planteamientos. Por tanto, ante la ausencia de la trascripción oral, nuestra intervención se ciñe a atender cuestiones puramente normativas a la luz de la evidencia expresamente contenida en el expediente apelativo que atendemos.

Según se desprende del pronunciamiento apelado, las actuaciones de los apelantes en su predio no estaban respaldadas por ley. De la *Sentencia* que nos ocupa surge que la prueba documental, ilustrativa y testifical admitida durante la vista de interdicto, estableció que estos no contaban con los permisos agenciales pertinentes para avalar el alcance e impacto de los trabajos de construcción y desarrollo que estaban efectuando en su

predio, requisito legal y reglamentario que legitima los términos del desarrollo de los terrenos en nuestra jurisdicción. Particular importancia reviste al contenido del *Informe de Investigación* suscrito por la Junta de Planificación, ello en ocasión a la querella incoada por los apelados.  En el mismo se hizo constar la expresa admisión de los apelantes en cuanto a que no contaban con la permisología requerida para las actividades llevadas a cabo en su predio, lo que, por sí mismo, derrota su contención.  En este contexto particular, quedó demostrado que el único permiso del que disponían los apelantes era uno expedido por la OGPe, ello a los exclusivos fines de anclar un vagón en su predio.  Sin embargo, estos no gozaban del aval agencial pertinente para alterar la topografía de suelo de su solar, por lo que las obras de descortezamiento de terreno y relleno que llevaron a cabo, tal cual resuelto, son ilegales. Por tanto, en ausencia de prueba en contrario sobre el incumplimiento de los apelantes con las exigencias para validar sus obras de construcción, más aún, cuando el inmueble impactado es uno clasificado como protegido por ley, forzoso es concluir que el pronunciamiento emitido por el Tribunal de Primera Instancia es correcto en derecho.

De otra parte, respecto a la determinación de temeridad que redundó en la imposición de honorarios de abogado a los apelantes, resolvemos no imponer nuestro criterio sobre el empleado por la sala sentenciadora. Tal cual dicta la norma, dicha facultad es una inherente al ejercicio discrecional del adjudicador de hechos, ello a la luz de la conducta procesal de las partes según establecida ante sí. En el caso de autos, se demostró que los apelantes conocían sus actuaciones al margen de la ley, así como que persistieron en las mismas, aún cuando les fue advertida la ilegitimidad de su conducta. De igual modo, surge que, en defensa de las alegaciones en su contra, estos opusieron un permiso expedido por OGPe que

no guardaba relación con los actos denunciados. Siendo así, no podemos, sino coincidir, con la determinación de temeridad.

En mérito de lo antes expuesto, sostenemos el dictamen apelado en toda su extensión. Toda vez la naturaleza de los señalamientos propuestos por los apelantes, se hacía meritoria la presentación de la transcripción de los procedimientos para colocarnos en posición suficiente de adjudicar las controversias planteadas. Sin embargo, en defecto de ello, y en ausencia de un error de derecho que invalide lo dispuesto por el foro *a quo,* procede la confirmación de la *Sentencia* apelada.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones. La Juez Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones